# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

BURT CALVIN PAGE                                            PLAINTIFF

V.                  NO. 3:17CV00006 SWW-JTR

NANCY A. BERRYHILL,[1]
**Acting Commissioner,**
**Social Security Administration**                          DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Burt Calvin Page, applied for disability benefits and supplemental security income benefits on March 20, 2013, alleging a disability onset date of August 31, 2012.[2] (Tr. at 12). After conducting a hearing, the Administrative Law

---

[1] Berryhill is now the Acting Commissioner of Social Security and is automatically substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

[2] Page filed a prior application on June 4, 2007. (Tr. at 75). That application was denied at all

Judge ("ALJ") denied his application. (Tr. at 24). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner. Page has requested judicial review.

For the reasons stated below, the Commissioner's decision should be affirmed.

## II. The Commissioner's Decision:

The ALJ found that Page had not engaged in substantial gainful activity since the alleged onset date of August 31, 2012. (Tr. at 14). At Step Two, the ALJ found that Page has the following severe impairments: borderline intellectual functioning, depressive disorder, cognitive disorder, mood disorder, substance addiction disorder, cirrhosis, hepatitis, GERD, and chronic obstructive pulmonary disease. (Tr. at 15).

After finding that Page's impairment did not meet or equal a listed impairment (Tr. at 17),[3] the ALJ determined that Page had the residual functional capacity ("RFC") to perform the full range of light work, except that: (1) he would need to avoid concentrated exposure to pulmonary irritants; (2) he should not work at unprotected heights or with dangerous machinery; (3) he would be limited to jobs involving simple and routine tasks where changes in the workplace setting would be

---

levels of appeal. (Tr. at 75-80).

[3] Listing 12.05 for intellectual functioning is the only Listing that Page refers to in his brief.

infrequent and gradually introduced; and (4) he could have occasional appropriate interaction with supervisors, coworkers, and the public in the workplace. (Tr. at 19).

The ALJ found that Page was unable to perform past relevant work. (Tr. at 23). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Page's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, specifically picking table worker and basket filler. (Tr. at 24). Consequently, the ALJ found that Page was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an

3

opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Page's Arguments on Appeal

Page argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that the ALJ: (1) should have further developed the record with respect to the intellectual functioning Listing (12.05); and (2) did not give proper weight to the opinion of Dr. David Lee Webber, D.O. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

The medical evidence relating to Page's intellectual capacity reveals borderline intellectual functioning, which the ALJ classified as a severe impairment. (Tr. at 15). A 2007 mental consultative examination conducted by Kenneth B. Jones, Ph.D., revealed no mood, anxiety, or personality disorders, and no psychiatric

treatment, outside two experiences with drug rehabilitation treatment.[4] (Tr. at 417).
Dr. Jones concluded that Page's main impairments stemmed from long-term alcohol and drug abuse. *Id.* Page appeared "somewhat hungover during the evaluation with noticeably blood shot eyes and some minor slurring to his speech." (Tr. at 472). He lost his driver's license due to a DUI charge. *Id.* He drinks 1.5 pints of straight gin per day. (Tr. at 79).

While the standard WAIS-III intellectual ability test administered by Dr. Jones revealed a full scale IQ of 63 (extremely low range), Page's thought process was goal directed and relevant, and Dr. Jones opined that Page's low IQ score was mainly a result of limited education and chronic alcohol and drug abuse. (Tr. at 473-474). Page claimed at the hearing that he was in special education classes in school (Tr. at 38), but at examinations and interviews he repeatedly denied attending such classes. (Tr. at 303, 336, 417, 479). There is no evidence of special education classes in the record. An unsupported statement done not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Dr. Jones concluded that Page's low intellectual ability did not interfere with his day-to-day adaptive functioning, as he was able to do household chores and

---

[4] While Page relies upon Dr. Jones's opinion, this examination occurred five years prior to the relevant time period under review.

5

dress, feed, and bathe himself. (Tr. 17, 474). Page explained that he spent most of his days drinking with friends. (Tr. at 472). However, he was able to mow lawns for money, prepare simple meals, wash dishes, shop, and maintain good relationships with authority figures, friends, family, and the public. (Tr. at 17-21). Such daily activities undermine Page's claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). Not only do these activities undermine claims of disability, but they contradict Page's claim that he met Listing 12.05. To meet that Listing, a full-scale IQ score of 60-70 must be accompanied by additional significant work-related limitation of function. (Tr. at 19).

In August 2012, Beth Meyer-Bulley, Ph.D., performed a consulting exam and concluded that, while Page was limited in intellectual functioning, he maintained an appropriate level of adaptive functioning. (Tr. at 513). And, when Dr. Jones evaluated Page again in July 24, 2013, he found that: (1) Page had no limitation in adaptive functioning; and (2) Page retained the ability to comprehend and function in a basic work environment effectively. (Tr. at 544). Dr. Jones noted that Page reported drinking alcohol before the examination, but his mood, affect, speech, and thought process were appropriate. (Tr. at 542). Alcohol abuse certainly impacted Page's intellectual ability, but nonetheless, he did not have serious limitations in the functions required in a work setting. The ALJ did not err in his Listing decision.

Moreover, the ALJ did not fail in his duty to develop the record with respect to Listing 12.05. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a Plaintiff has the burden of proving his disability. *Id*. The ALJ is required to recontact a treating or consulting physician only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). The opinions of psychological consultants outlined above provide ample evidence to support the ALJ's decision. Moreover, state-agency non-examining medical consultants found at most, only moderate limitation in adaptive functioning, which would limit Page to unskilled work.[5] (Tr. at 110, 139). These opinions are reflected in the RFC assigned by the ALJ, which he based on a well-developed record.

Page asserts that the ALJ erred in giving Dr. Webber's opinion only "some weight." (Tr. at 22). He alleges a treating physician's opinion should be given controlling weight. Dr. Webber was not a treating physician. He was a one-time state-agency consulting examiner. (Tr. at 532). The opinion of a consulting physician who examines a claimant once or not at all is not entitled to special weight. *Kirby v.*

---

[5] Unskilled work is not complex. See See 20 C.F.R. §§ 404.1568(a), 416.968(b) SSR 83-10 (unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time").

*Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). Furthermore, Dr. Webber's vague opinion that Page had "severe" postural limitations is not supported by the clinical findings in his own report. *See Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005)("physician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies.") Thus, the ALJ afforded appropriate weight to the medical opinions in this case.

## V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision that Page was not disabled. The ALJ did not fail in his duty to develop the record and he assigned appropriate weight to the opinion of Dr. Webber.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that the case be DISMISSED, with prejudice.

DATED this 26th day of September, 2017.

_____
UNITED STATES MAGISTRATE JUDGE